Emma Farenga v. Commissioner. Salvatore A. Farenga and Emma Farenga v. Commissioner. Salvatore A. Farenga v. Commissioner. Farenga Brothers, Inc. v. Commissioner.
Farenga v. Commissioner
Docket Nos. 51028-51031.
United States Tax Court
T.C. Memo 1955-279; 1955 Tax Ct. Memo LEXIS 57; 14 T.C.M. (CCH) 1087; T.C.M. (RIA) 55279; October 18, 1955
*57 Deductions: Business expenses: Repairs: Nondeductibles: Capital expenditures: Structural improvements in leased property. - Expenditures made by the corporation in 1949 incident to structural changes in the premises which it leased were capital in nature and not deductible as a business expense. The expenditures in 1950 for papering and painting the premises were for repairs and were properly deductible as a business expense. The cost of capital improvements made on premises leased for five years should have been depreciated over the useful life of the improvements because it was reasonably certain that the lease would be renewed. Advances: Dividends v. loans. - Net annual advances made to the stockholders by their wholly-owned corporation were distributions of earnings, taxable as dividends. Statute of limitations: Omission in excess of 25%. - 1939 Code Sec. 257(c) precludes the application of the statute of limitations to the taxable years 1947 and 1948. Allen G. Gartner, Esq., and Edward I. Sproull, C.P.A., 17 East 42nd Street, New York, N. Y., for the petitioners. John J. O'Toole, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion
*58 In these proceedings, consolidated for hearing and opinion, the respondent determined deficiencies in income taxes against the petitioners as follows: Docket No.
Petitioner
Year
Amount
51031
Farenga Bros. Inc.
1949
$1,374.89
1950
1,600.17
1951
4,747.17
51030
Salvatore A. Farenga
1947
4,406.51
51028
Emma Farenga
1947
593.81
51029
Salvatore A. Farenga and Emma Farenga (husband
and wife)
1948
1,571.40
1949
3,084.46
1950
2,868.92
1951
5,045.04
The two issues presented by the corporation petitioner are: (1) whether amounts expended by that petitioner in 1949 and 1950 are deductible as expense items for repairs, or constitute capital expenditures subject to depreciation or amortization, and (2) whether the costs borne by that petitioner in making improvements on property leased by it from a commonly controlled corporation should be amortized over the term of the lease or over the useful life of the improvements. The issues presented by the individual petitioners are: (1) whether certain withdrawals made during the taxable years by these petitioners from the corporate petitioner, of which they were the sole stockholders, *59 were dividends or loans, (2) if they constituted dividends, the amount thereof, and (3) whether the deficiencies determined against them for the years 1947 and 1948 are barred by the statute of limitations. The last issue will depend on the resolution of the first issue since the respondent is relying in this regard on section 275(c) of the Internal Revenue Code of 1939. Findings of Fact The parties have filed herein partial stipulations of fact, together with exhibits attached thereto, which are incorporated herein by this reference. Farenga Bros. Inc. was incorporated in 1928 under the laws of the State of New York, and since that time has been engaged in the business of conducting a funeral parlor. The petitioners, Salvatore A. and Emma Farenga, are husband and wife. Salvatore, together with his son, Felix A. Farenga, are funeral directors. Emma is, and has been, active in the affairs of the corporation, one of her activities being the creation of good will for it by participating in the activities of social organizations and by entertaining prospective customers. Salvatore and Emma own equally all the stock in Farenga Bros. Inc. During the years involved herein they were, *60 respectively, president and secretary of the corporation, while Felix was its treasurer. Prior to 1941, Farenga Bros. Inc. occupied premises at 218 East 116th St., New York, N. Y. On January 18, 1941, Salfar Realty Corp. was organized and incorporated under the laws of the State of New York. Like Farenga Bros. Inc. all of its stock was owned equally by Salvatore and Emma Farenga. The purpose for the creation and existence of Salfar was to own and lease premises to be occupied by Farenga Bros. Inc., located in the same neighborhood but at a new address. Salfar purchased property at 204 East 116th St., in February 1941, and then in May 1941 leased the premises to Farenga Bros. Inc. for a five-year term. In May 1946 this lease was renewed for another five-year term. In 1951 it was again renewed. Farenga Bros. Inc. expects that it will be renewed again in 1956. Since 1941 Salfar and Farenga Bros. Inc. have jointly occupied the premises at 204 East 116th St. Salfar kept no books of its own but maintained its accounts from entries made in the books of Farenga Bros. Inc. Salfar's only income during the years 1946 to 1951 was from the rentals paid by Farenga Bros. Inc. In addition, Farenga *61 Bros. Inc. paid the mortgage on the property owned by Salfar and leased to it, and recorded the sums of such payments in an account receivable under Salfar's name. During the taxable year 1947 Farenga Bros. Inc. caused certain additions and alterations to be made to the property which it occupied as a lessee. The amounts expended in these alterations, in the total sum of $18,776.33, were capitalized on petitioner's books and amortized on its returns over the terms of the lease, that is, one-fifth ($3,755.26) in each of the years in issue. The respondent made the determination that the amount expended in these alterations should be amortized over the period of the useful life of the improvements, and not over the five-year term of the lease. Thus the deduction taken by the petitioner of $3,755.26 in each of the taxable years in issue was disallowed, and the respondent amortized the sum of $18,776.33 over the useful life of the improvements. During the taxable year 1949 petitioner Farenga Bros. Inc. expended the sum of $1,250 for the remodelling of the interior of the leased property. This work called for the construction of a wood and glass partition in the lobby of the building, *62 the construction of a desk, the installation of a door in the partition, the removal of two doors under the main stairs, the enlargement of an opening under the stairs, the installation of asphalt tiles under the stairs and the installation of new electrical fixtures, plumbing and painting in connection with this remodelling work. This work constituted permanent improvements to the property and the expenditures therefor were capital in nature. During the taxable year 1950 petitioner Farenga Bros. Inc. expended the sum of $1,400 for repainting and papering the leased premises. This work constituted repairs and the amounts expended therefor constituted an ordinary and necessary business expense. For many years prior to 1947 the individual petitioners, Salvatore A. and Emma Farenga, the sole stockholders of the petitioner corporation, had withdrawn funds from the corporation for their personal use. These withdrawals were in amounts and at times necessary to enable Salvatore and Emma to pay their personal bills and other personal expenses. Accounts were set up on the books of Farenga Bros. Inc. to reflect the drawing accounts of the individual petitioners. On the first day of January *63 1946 these accounts showed a debit balance of Salvatore in the amount of $67,264.69, and a debit balance in the account of Emma in the amount of $14,865.82. During the years 1947 to 1952, the debit balances as of the 1st of January in each of these accounts were as follows: Salvatore
Emma
$ 71,247.61
$17,798.80
83,988.35
20,797.24
88,476.02
22,812.91
97,893.63
25,079.84
101,268.19
26,893.75
109,286.86
29,019.12
During the years 1947 to 1951, inclusive, the following amounts were withdrawn by the individual petitioners from the funds of Farenga Bros. Inc.: Salvatore
Emma
$17,952.34
$5,825.04
12,138.27
4,615.67
16,917.61
4,866.93
15,874.56
4,813.91
18,540.63
5,645.37
During the same years credits were made to these drawing accounts as follows: Salvatore
Emma
$ 5,211.60
$2,826.60
7,650.60
2,600.00
7,500.00
2,600.00
12,500.00
3,000.00
10,521.96
3,520.00
These credits consisted of the salaries payable to Salvatore and Emma from the corporation in the respective amounts of $5,200 and $2,600 in 1947, $7,500 and $2,600 in 1948 and 1949, and $7,500 and $3,000 in 1950 and 1951. They also include a credit *64 made in 1950 in the account of Salvatore on account of his payment to or for the use of the corporation of $5,000 representing the proceeds of a paid-up insurance policy owned by him, the crediting to his account in 1951 of a dividend declared by Farenga Bros. Inc. in that year, and a crediting of $520 made to the account of Emma in 1951 representing a reimbursement to her of expenses incurred by her for entertaining on behalf of the corporation. There were also other small credits to these accounts unexplained by the testimony but recognized by the respondent. The dividend of $3,000 declared by Farenga Bros. Inc. to petitioner Salvatore was the only formal dividend ever declared by Farenga Bros. Inc. Salvatore and Emma reported their respective salaries in their income tax returns for each of the taxable years and Salvatore also reported in his income tax return for 1951 the $3,000 dividend declared by the corporation in that year. The withdrawals of Salvatore and Emma in excess of the credits above referred to, and appearing on the books of Farenga Bros. Inc. for the taxable years, were as follows: Year
Salvatore
Emma
1947
$12,740.74
$2,998.44
1948
4,487.67
2,015.67
1949
9,417.61
2,266.93
1950
3,374.56
1,813.91
1951
8,018.67
2,125.37
*65 Respondent determined that these amounts constituted, in reality, dividends to Salvatore and Emma, and additional income to them, with the exception that in the taxable years 1950 and 1951 respondent determined that the amounts of Salvatore's withdrawals should not be reduced by credits on account of the proceeds of the paid-up insurance policy and the amounts of the formally declared dividend, and that Emma's withdrawals for 1951 should not be reduced by the credit to her account of $520 representing reimbursements for entertainment expenses. During the years 1947 to 1951, inclusive, Salvatore loaned various amounts of money to the corporation upon which repayments were made from time to time. A loan-payable account was kept to reflect this account which showed the indebtedness of the corporation to Salvatore as of January 1st of the years 1947 to 1952 of the following amounts: $ 1,200.00, 13,053.99, 4,683.99, 11,183.99, 9,583.99, 3,083.99 These loans were made by Salvatore to the corporation because the financial condition of the corporation was such that it was unable to borrow money from outside sources on its own account. It owned no negotiable assets of any consequence *66 so that when it needed money its sole stockholders, Salvatore and Emma, would, on occasion, borrow money on their life insurance policies and, in turn, lend the borrowed funds to the corporation. The net operating profits of Farenga Bros. Inc. as reported in its tax returns for the years 1947 to 1951, inclusive, were as follows: Year
Amount
1947
$26,803.90
1948
12,496.47
1949
14,232.34
1950
18,909.66
1951
24,756.88
The balance sheets of Farenga Bros. Inc. included in its assets as accounts receivable the withdrawal accounts of Salvatore and Emma. These balance sheets indicated an increase of the earned surplus of Farenga Bros. Inc. for the years 1947 to 1951, inclusive, as follows: Year
Amount
1947
$19,950.10
1948
8,519.38
1949
11,058.90
1950
14,560.33
1951
14,639.28
No note or other evidence of indebtedness was ever given to the corporation by Salvatore or Emma on account of any of their withdrawals from the corporation, and no interest was ever paid or accrued thereon. Opinion KERN, Judge: The first issues to be decided concern the deductibility by the corporate petitioner in 1949 and 1950 of expenditures made in the *67 amount of $1,250 in the first year and $1,400 in the second. The resolution of these issues depends upon whether we conclude on the evidence before us that these expenditures were for repairs or were capital improvements. As we have indicated in our findings our conclusion is that the expenditures made in 1949 incident to structural changes in the premises leased by petitioner were capital in nature and are not deductible as a business expense; and that the expenditures made in 1950 incident to papering and painting the premises were for repairs and are properly deductible as a business expense. The remaining issue presented by the corporate petitioner is whether one-fifth of the cost of capital improvements made by it on premises leased from a commonly controlled corporation for a stated term of five years should be deducted in each of the five years in lieu of a deduction for depreciation or should be depreciated over the useful life of the improvements on the ground advanced by respondent that the facts herein and existing during the taxable years show with reasonable certainty that the lease would be renewed. On this issue we agree with respondent. On the facts shown of record *68 in this proceeding we cannot avoid the conclusion that the corporate petitioner could and would renew the lease. It had been renewed in 1946 and was renewed in 1951; and petitioner's treasurer testified that he anticipated that it would be renewed in 1956. The only doubt expressed in the testimony concerning a renewal had to do with a possibility that this petitioner might find it desirable to change at some future time its business location. We do not feel that this vague possibility affected the reasonable certainty that the lease would be renewed. Therefore, we consider that this petitioner was a lessee for an indeterminate time and the allowance for exhaustion of the cost of improvements should be based on the life of the improvements. The principal issue presented by the individual taxpayers is whether the advances made to them by their wholly-owned corporation during the taxable years constituted distributions of dividends, as determined by respondent, or were loans, as contended by petitioners. Most of the facts established by the record are persuasive that the advances during the taxable years were, in reality, distributions of earnings as dividends to its stockholders. *69 Few, if any, of the facts are persuasive to the contrary. The only part of the record which would lead to a different result is the testimony of Salvatore A. Farenga to the effect that he intended to repay the advances made to him. In the face of the facts we are unable to accept his self-serving testimony. We have considered all of the factors pertinent to a consideration of this issue and have concluded that the advances made to the individual petitioners were, in reality, distributions of the corporate earnings as dividends. However, we are of the opinion that respondent erred in his determination that, in 1950 and 1951, the amounts of the advancements to be considered as dividends were not the net amounts of the advancements but were the amounts of the advancements less the credits thereto of petitioner's salaries but with no credit given for the $5,000 credited to Salvatore's account by reason of his payment to the corporation of that sum in 1950, with no credit given for the $3,000 credited to his account by reason of his repayment to the corporation of a formal dividend received by him in that sum from the corporation in 1951, and with no credit given for the sum of $520 *70 credited to Emma's account by reason of her authorizing such a credit of an amount awarded to her as a reimbursement of entertainment expenses defrayed by her for the benefit of the corporation. Respondent's justification of his actions in refusing to recognize these credits is without validity and is inconsistent with his contention and our conclusion that the advancements made by the corporation to the individual stockholders were dividends and not loans. We conclude that only the net annual advancements to the individual stockholders as shown on their accounts constituted dividend income to them during the taxable years. It is apparent from the income tax returns of the corporation that its earnings during each of the taxable years were in excess of the amounts which we have concluded constituted dividends to the individual taxpayers. It is also apparent that by reason of our conclusions on the foregoing issues, section 275(c) of the Internal Revenue Code of 1939 precludes the application of the statute of limitations to the taxable years 1947 and 1948. Decision will be entered under Rule 50.